IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY ODOM (AIS# 278996), | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 14-00133-CG-B |
| | : | |
| KARLA JONES, | : | |
|     Defendant. | : | |
| | : | |

## Report and Recommendation

Petitioner Timothy Odom ("Odom"), an Alabama prisoner proceeding *pro se,* has filed a petition seeking habeas corpus relief under 28 U.S.C. § 2254 (Doc. 1). The petition, which has been fully briefed and is ripe for adjudication, has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Based upon a thorough review of the petition, the briefs and supporting materials, the undersigned finds that an evidentiary hearing is not warranted[1] and that the petition is due to be denied. Accordingly, it is recommended that Odom's habeas petition be denied in its entirety and that judgment be entered in favor of Respondent and against Petitioner, Timothy Odom, and that if Odom

---

[1] Because Odom filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." *Kelley v. Sec'y for Dep't of Corrs.*, 377 F. 3d 1317, 1337 (11th Cir. 2004). Odom has failed to establish that an evidentiary hearing is warranted in this case. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner . . . to establish the need for an evidentiary hearing.").

seeks the issuance of a certificate of appealabilty, his request be denied, along with any request to appeal *in forma pauperis*.

## I.  <u>FINDINGS OF FACT</u>

Odom was charged with one count of first-degree rape, one count of first-degree sodomy, and one count of sexual abuse of a child less than twelve years of age. *T.O. v. State of Alabama*, CR-10-1889  (Ala. Crim. App. 2013);(Doc. 7-10 at 1-3). The jury returned guilty verdicts against Odom on all three counts. *Id.* The trial court sentenced Odom to consecutive terms of life imprisonment for the first-degree rape and first-degree sodomy convictions and 20 years imprisonment for the sexual abuse conviction. *Id.*

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[2]

> C.C., who was 16 years old at the time of trial, was 6 years old when her mother, K.O., married T.O. in 2001.  At that time, C.C. lived with her father, R.C., and visited K.O. every

---

[2]   AEDPA directs that a presumption of correctness be afforded to factual findings of state courts, "which may be rebutted only by clear and convincing evidence." *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." *Id.* (citing *Sumner v. Mata*, 449 U.S. 539, 547, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1981)).  These facts are recited in the unpublished memorandum opinion of the Alabama Court of Criminal Appeals denying Odom's direct appeal of his trial and conviction.  *See T.O. v. State of Alabama*, CR-10-1889  (Ala. Crim. App. 2013) (Doc. 7-10).

other weekend. When C.C. was seven years old, her mother and T.O. lived in what C.C. identified as the "Alco house." During this time, T.O. began touching C.C.'s "private parts," which C.C. identified as "[her] chest and between [her] legs." (R. 198). C.C. testified that these incidents occurred on the couch in the living room when no one else was around. She testified that similar instances continued to occur after her mother and T.O. moved to a house on "Sheffield Lane" in East Brewton and after they moved to the "Brewington Apartments." According to K.O., C.C. "got to where she didn't want to come [for her weekend visits with K.O. at the Alco house]," and her resistance to spending weekends at K.O.'s house "really escalated when [they] moved to Sheffield Lane." (R. 286.) R.C. also testified that he noticed a gradual change in C.C.'s behavior after her weekend visits with K.O.; he said that she would often be upset and even distraught when she returned from the visits and that she often did not want to go to K.O.'s for the visits. R.C. stated that C.C. became increasingly angry and aggressive and began "lashing out."

C.C. testified that she had her own bedroom when she visited her mother and T.O. at the Brewington Apartments and that during her visits there T.O.'s sexual abuse escalated to rape and sodomy.

C.C. testified that K.O. and T.O. moved to "Mayo Street" after living at the Brewington Apartments and that the rape, sodomy, and sexual abuse continued at the Mayo Street residence. C.C. turned 12 years old while K.O. and T.O. lived at that residence.

In March 2008, K.O. and T.O. separated. In the summer of 2008, when C.C. was 13, she told K.O. about the rape, sodomy, and sexual abuse. K.O. called the police, and the police came to her house and made a report. The police instructed K.O. to take C.C. to the Child Advocacy Center.

After being interviewed at the Child

Advocacy Center, C.C. was taken to the Department of Human Resources ("DHR") and was later examined by Dr. Marsh Raulerson, a pediatrician with training in performing sexual-assault examinations on children. Dr. Raulerson examined C.C on August 5, 2008. Dr. Raulerson noted that C.C. "had a tear through her hymen at the six o'clock position that was a totally disrupted hymen." (R. 358-59.) The tear was "old," had not occurred within "the last couple of weeks," and did not show "signs of recent trauma." (R. 359.) Dr. Raulerson testified that the extent of the hymenal tear was "a positive finding for sexual abuse in a child," that the type of injury C.C. had sustained was "consistent with penetration . . . by a male penis," and that she had never seen a hymenal tear like C.C.'s caused by anything "other than sexual abuse." (R. 362, 364, 366) Dr. Raulerson testified that behavior changes are common in children who suffer from all types of abuse and that for a variety of reasons – including guilt and fear - - children frequently delay reporting their abuse. (R. 360-61, 363.)

T.O. testified in his own defense and denied having ever had any inappropriate sexual contact with C.C. Seven other witnesses testified on T.O.'s behalf; their testimony was offered in support of T.O.'s character and to impeach testimony given by the State's witnesses.

*Id.* (Footnotes omitted).

Odom sought a new trial based primarily on claims of insufficient evidence, juror misconduct, and the recanting of the victim's testimony. (Doc. 7-3 at 41). Following a hearing at which various witnesses testified, the trial court, on August 5, 2011, denied the motion. (Doc. 7-3 at 55). Odom then filed a direct appeal with the Alabama Circuit Court of Criminal Appeals. (Doc. 7- 8). He raised the following claims: (1) the sufficiency and weight of the evidence were insufficient to

sustain his convictions, (2) his counsel was ineffective because he failed to call additional witnesses, failed to introduce Odom's medical records, and failed to make certain objections during trial, (3) juror misconduct prejudiced the verdict, (4) the trial court erred in refusing to give a requested jury charge, and (5) the victim's testimony was perjured. (Doc. 7-8). The Alabama Court of Criminal Appeals affirmed Odom's convictions in an unpublished memorandum opinion on February 1, 2013. (Doc. 7-10). Following the denial of Odom's application for rehearing (doc. 7-12 at 32), he sought certiorari review before the Alabama Supreme Court on two grounds: 1)ineffective assistance of counsel[3]; and 2)juror misconduct. (Doc. 7-12). On May 10, 2013, the Alabama Supreme Court denied certiorari and a certificate of judgment issued. (Doc. 7-1 at 2).

On March 16, 2014,[4] Odom filed the instant petition for a writ of habeas corpus setting forth three grounds for habeas relief: (1) Insufficient Evidence to Support the Verdict, (2)

_____

[3]   Odom again argued that his counsel was ineffective because he failed to exam all available witnesses, he failed to present medical documentation, and he failed to make timely objections. (Doc. 7-12 at 6-7).

[4]   Absent evidence to the contrary, the Court assumes that the petition was delivered to prison authorities for mailing on the day the Odom signed it. *See Washington v. U.S.*, 243 F.3d 1299, 1301 (11th Cir. 2001).  In this case, Odom's petition bears a signature date of March 16, 2016 (doc. 1 at 13), but was received by the Clerk's Office on March 20, 2014.  Thus, the Court finds that the "2016" is a scrivener's error and deems the filing date to be March 16, 2014.

Ineffective Assistance of Counsel, and (3) Juror Misconduct Prejudicing Verdict. (Doc. 1). The Respondent filed a response in opposition (doc. 7), and Odom filed a reply (Doc. 8). Nearly a year later, Odom filed a supplement to his petition, and sought to raise, for the first time, new claims. (Doc 12). This action is now ripe for adjudication.

II.  **STANDARD OF REVIEW FOR HABEAS CORPUS RELIEF**

This court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Section 2254(d) provides that " habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C § 2254(d)(1), (2).

> A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).
>
> A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 120 S. Ct. at 1520.  In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

*Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000). Moreover, the burden of rebutting a presumption of correctness of the state courts' decision by clear and convincing evidence is on the petitioner.  28 U.S.C. § 2254(e); *Hill v. Linahan*, 697 F. 2d. 1032, 1036 (11th Cir. 1983) ("The burden of proof in a habeas proceeding is always on the petitioner.") (citing *Henson v. Estelle*, 641 F. 2d 250, 253 (5th Cir. 1981)).

With the grounds of review established, the court will now address Odom's claims.

III. **DISCUSSION**

   **A. Issues raised in original petition**

      **1. Insufficient Evidence to Support the Verdict.**

Odom argues in his original petition that he is entitled to relief under 28 U.S.C. § 2254 because the evidence was not sufficient to support his convictions. (Doc. 1 at 4, 17). Respondent asserts, and the record confirms, that this claim is procedurally defaulted because Odom failed to properly exhaust the claim. While Odom presented this claim to the Alabama Court of Criminal Appeals,[5] he did not raise it in his petition for certiorari review before the Alabama Supreme Court. (Doc. 7 at 6-7). Thus, the claim is procedurally defaulted. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999)("[S]tate prisoners must give the state courts one full

---

[5]    The Alabama Court of Criminal Appeals rejected Odom's sufficiency argument, and stated, in part:

> [T]he State's evidence, as outlined above, clearly was sufficient to establish a prima facie case and to support the jury's verdicts of guilty.  T.O. asserts that the State relied primarily on the testimony of C.C., but "'[t]he testimony of the victim alone is sufficient to establish a prima facie case of either rape or sexual abuse.'" *Pierson v. State*, 677 So. 2d 830, 832 (Ala. Crim. App. 1996) (quoting *Jones v. State*, 580 So. 2d 97, 103 (Ala. Crim. App. 1991).  Moreover, C.C.'s testimony was corroborated by other witnesses for the State.  C.C.'s parents testified regarding behavioral changes they observed in C.C. during the time that T.O. was committing the sexual offenses against her.  . . .  Dr. Raulerson concluded "with a reasonable degree of medical certainty" that C.C. had been sexually abused. . . .

*T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App. 2013) (Doc. 7-10 at 8).

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.). To obtain habeas relief, generally, a state prisoner must exhaust available state remedies prior to seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1); *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). The Eleventh Circuit has succinctly stated the rule as follows:

> Generally, a habeas corpus petitioner cannot raise a claim in federal court if he did not first exhaust the claim in state court. 28 U.S.C. § 2254(b)(1)(A); *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1343 (11th Cir.2004). A federal claim is exhausted only if fairly presented to the state courts. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir.2005) (citing *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)). A petitioner has not fairly presented his claim to the state court if such claim is presented for the first and only time in a procedural context where the merits are not considered. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060, 103 L. Ed. 2d 380 (1989).

*Cargile v. Sec'y Dep't of Corrs.*, 349 F. App'x 505, 507 (11th Cir. 2009). In Alabama, exhaustion of a claim requires raising the claim through the state courts to the Supreme Court of Alabama. *See Dill v. Holt*, 371 F.3d 1301, 1303 (11th Cir. 2004)("Under Alabama law, 'one complete round' of review [] includes: (1) filing a petition for certiorari in state circuit court; (2) appealing the denial of that petition to the Alabama Court of Criminal Appeals; (3) petitioning the Alabama Court of

Criminal Appeals for rehearing; and (4) seeking discretionary review in the Alabama Supreme Court. . .").  Failure to exhaust state court remedies generally results in the "preclusion of review in the federal court." *Woodford v. Ngo*, 458 U.S. 81, 92, 126 S. Ct. 2378, 165 L.Ed.2d. 368 (2006) ("Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal . . . the petitioner procedurally defaulted those claims [and] generally is barred from asserting those claims in a federal habeas proceeding.").

Here, Odom failed to exhaust this claim because he did not present it in his certiorari petition filed with the Alabama Supreme Court. And, no state remedy remains by which Odom may now present his unexhausted claim because any attempt to exhaust the claim in state court would be barred by applicable state procedural rules. In short, it is too late for Odom to file another petition for writ of certiorari presenting this claim to the Alabama Supreme Court.

This court may a reach a procedurally defaulted claim only in two narrow circumstances:

> First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)*; [Wainwright v.]Sykes,* 433 U.S. [72,] 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 [(1977)]. . .Second, a federal court may

> also grant a habeas petition on a
> procedurally defaulted claim, without a
> showing of cause or prejudice, to correct
> a fundamental miscarriage of justice.
> *Murray,* 477 U.S. at 495-96. A
> "fundamental miscarriage of justice"
> occurs in an extraordinary case, where a
> constitutional violation has resulted
> in the conviction of someone who is
> actually innocent. *Id.*

*Henderson v. Campbell,* 353 F. 3d 880, 892 (llth Cir. 2003).

Odom asserts that he can overcome the procedural default of this claim because he is actually innocent of the charges for which he was convicted. (Doc. 7 at 1-3). Aside from his conclusory assertions that he is actually innocent, Odom has failed to come forth with new evidence that establishes "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 327 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Consequently, his claim that the evidence was not sufficient to sustain his convictions is procedurally defaulted and thus foreclosed from federal habeas review[6].

---

[6]    Even if the claim was not procedurally defaulted, it is without merit. Based on a review of the trial transcript and testimony of the State's five witnesses, the undersigned determines that the evidence was sufficient to sustain all three convictions.  At the trial, the victim, C.C., testified as to her age (mostly in relation as to where she remembered living) at the time the offenses of rape, sodomy, and sexual abuse occurred, and those ages were corroborated by her mother's testimony (Doc. 7-4 at 180, 192-93, 203; 7-5 at 70-71), thus proving that the victim was under the age of 12 at the time of

## 2. Ineffective Assistance of Trial Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," U.S. CONST. Amend. VI, and that counsel must also be effective. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). Odom claims he was denied this constitutional right to effective counsel.

### a. Failure to Call Additional Character Witnesses

Odom seeks relief under § 2254 based on his trial counsel's failure to present all available witnesses on his behalf at the

---

the offenses. Additionally, the doctor's testimony regarding her examination of C.C. was conclusive as to penetration (doc. 7-5 at 140-42, 148-49) and thus satisfied the needed element for rape. Additionally, C.C.'s testimony provided details of acts needed to establish sodomy and sexual abuse. (Doc. 7-4 at 180, 203); *Webb v. State*, 455 So.2d 223, 226 (Ala. Crim. App. 1984) (The victim's testimony is sufficient to establish a prima facie case, and other medical testimony or physical evidence corroborating the victim's testimony is not required.). Furthermore, C.C.'s dad, Odom's sister, and Odom's neighbor provided circumstantial evidence further bolstering C.C.'s testimony. (Doc.7-4 at 135-137; Doc. 7-5 at 173); *See Edwards v. State*, 139 So. 2d 827, 836 (Ala. Crim. App. March 29, 2013) (quoting *White v. State*, 314 So. 2d 857 (Ala. 1975), *cert. denied*, 423 U.S. 951 (1975) ("'Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.'")).

Accordingly, the undersigned finds that a "rational trier of fact" would "have found the essential elements of the crime[s] beyond a reasonable doubt." *Erwin,* 568 F. App'x at 751. Consequently, the evidence presented at trial was sufficient to support Odom's convictions.

trial.   (Doc. 1 at 18-19).   As Respondent asserts, this claim was raised in the state courts and denied on the merits.   In its denial, the Alabama Court of Criminal Appeals discussed the correct standard for ineffective assistance of counsel claims as follows:[7]

> The principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), guide our analysis of a claim alleging the ineffective assistance of counsel. To prevail on an ineffective-assistance-of-counsel claim, T.O. must establish (1) that counsel's performance was deficient and (2) that T.O. was prejudiced by the deficient performance. 466 U.S. at 687.   *See also Ex parte Lawley*, 512 So. 2d 1370, 1372 (Ala. 1987).
>
> "To meet this first prong of the test, [T.O.] must show that his counsel's representation fell below an objective standard of reasonableness.   The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances." *Lawley*, 512 So. 2d at 1372.   "'This court must avoid using "hindsight" to evaluate the performance of counsel.   We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.'"   *Lawhorn v. State,* 756 So. 2d 971, 979 (Ala. Crim. App. 1999) (quoting *Hallford v. State*, 629 So. 2d 6, 9 (Ala. Crim. App. 1992)).   "A court must indulge a strong presumption that counsel's

---

[7]   Because the Alabama Supreme Court denied Odom's petition for writ of certiorari without explanation, this Court looks to the reasoning of the Alabama Court of Criminal Appeals in its memorandum opinion (doc. 7-10) addressing Odom's claims. *See Powell v. Allen*, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010) (per curiam) ("When the last state court rendering judgment affirms without explanation, [federal courts] presume that it rests on the reasons given in the last reasoned decision." (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Sweet v. Sec., Dep't of Corrs.,* 467 F.3d 1311, 1316-17 (11th Cir. 2006))).

conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The United States Supreme Court in *Strickland* explained:

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

> *Strickland*, 466 U.S. at 689 (citations omitted).

To prove prejudice - - the second prong of the *Strickland* test - - "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that

the errors had some conceivable effect on the outcome
of the proceeding." *Id*. at 693.

*T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App. 2013)

(Doc. 7-10 at 9-10).

> The Alabama Court of Criminal Appeals reasoned:
>
> …T.O. has not demonstrated that the testimony from
> these 12 additional witnesses would have been anything
> other than cumulative to the character evidence
> presented at trial, and T.O. has not shown that
> counsel's failure to call the 12 additional witnesses
> was deficient performance or that, even assuming it
> was deficient performance, it prejudiced T.O. *See
> e.g., Payne*, 791 So. 2d at 404 ("'There has never been
> a case where additional witnesses could not have been
> called. The appellant presented relatives and
> personal friends who, upon interview, were found to
> testify on his behalf. We refuse to set a standard
> that a court may be reversed because it did not hear
> unoffered testimony from still more friends and
> relatives. We also refuse to say that a member of the
> bar is guilty of ineffectiveness for not calling every
> witness and friend who was willing to testify. To
> hold otherwise would clog an already overburdened
> system with repetitious testimony. The appellant has
> failed to satisfy either prong of the *Strickland*
> test.'" (quoting *State v. Tarver*, 629 So. 2d 14, 21
> (Ala. Crim. App. 1993)).

*T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App.

2013) (Doc. 7-10 at 11).

This court will not grant relief on a claim that has been

adjudicated on the merits by the state courts unless the

decision rendered was contrary to, or an unreasonable

application of, clearly established federal law. *See* 28 U.S.C.

§ 2254(d)(1). Having reviewed the record in this case, the

undersigned determines that the state appellate court's

determination regarding counsel's performance was reasonable, and Odom has failed to establish that his counsel was ineffective in violation of the governing standard found in *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to call additional character witnesses to testify at his trial.

Failure to call a witness to testify at trial must be distinguished from the failure to reasonably investigate and locate a witness, which can serve as a colorable claim of ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003) (observing that trial "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (quoting *Strickland*, 466 U.S. at 690-91)). The record shows that Odom's defense counsel called seven witnesses during the criminal trial to testify regarding Odom's good character and to impeach the testimony given by the State's witnesses. Odom offers no facts that suggest that the testimony of these twelve additional individuals would have strengthened his defense.[8] Instead, as articulated by the appellate court, the testimony of the potential witnesses would

---

[8]   The record shows that the twelve potential witnesses at issue consisted of Odom's friends and relatives. (Doc. 7-7 at 48-50, 56-59). One of the potential witnesses had a conviction for writing bad checks and another was not acquainted with Odom during the time the offenses were committed. (Doc. 7-7 at 40-42, 67-71). None of the witnesses offered testimony tending to prove Odom's innocence or bolstering his defense.

16

have been at most, merely cumulative of the testimony offered on Odom's behalf and would not have changed the outcome of his trial.   Thus, Odom has not met the heavy burden of showing deficient performance and prejudice with regard to this allegation.  *Strickland*, 466 U.S. at 687-90 (Petitioner has the burden of proving, by a preponderance of the evidence, that counsel's performance was unreasonable and "outside the wide range of professionally competent assistance.").

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1). Therefore, Odom's claim that his constitutional rights were violated by his counsel's failure to present additional character witnesses should be denied.

### b.  Failure to Introduce Medical Records

Odom argues that his trial counsel was "deficient for not presenting medical documentation as evidence in the trial" to support testimony that he was physically incapable of committing the charged offenses due to his health status.[9]   (Doc. 1 at 22).

---

[9]    Odom testified that he suffered two heart attacks and had stents placed in 2003, had surgery on his left testicle in 2005, and

This claim was presented to the state courts where it was denied,[10] with the Alabama Court of Criminal Appeals stating:

> At trial, T.O. and K.O. testified regarding T.O.'s health conditions, and K.O. conceded, on cross-examination, that T.O.'s health conditions could have contributed to the lack of intimacy during their marriage. (R. 330; 446-47; 468-69.) Thus, the introduction of medical records would have been cumulative of evidence provided through testimony at trial, and T.O.'s bare assertion that counsel was ineffective for failing to introduce the records does not entitle him to relief. *See e.g., Miller v. State*, 99 So. 3d 349, 413 (Ala. Crim. App. 2011) ("'[T]he failure to present evidence which is merely cumulative to that which was presented at trial is, generally speaking, not indicative of ineffective assistance of trial counsel.'" (quoting *Dunaway v. State*, [Ms. CR-06-0996, Dec. 18, 2009] __So. 3d __ [2009 Ala. Crim. App. LEXIS 174] (Ala. Crim. App. 2009)).

*T.O. v. State of Alabama*, CR-10-1889 (Ala. Crim. App. 2013)

(Doc. 7-10 at 13).

As noted *supra*, this court will not grant relief on a claim that has been adjudicated on the merits by the state courts unless the decision rendered was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Having reviewed the record in this case, the undersigned determines that the state appellate court's

---

circumcision due to diabetes in 2007. (Doc. 7-7 at 83). Odom further testified that he has "messed up discs in [his] neck, [his] back" and "crippling arthritis," as well as neuropathy from diabetes, high blood pressure, and cholesterol problems. (Doc. 7-6 at 29-30).

[10]   The Alabama Court of Criminal Appeals questioned whether or not the claim was properly preserved for appellate review. (Doc. 7-10 at 12). The court determined even if such argument was preserved, it was meritless. (*Id.*).

determination regarding counsel's performance was reasonable, and Odom has failed to establish that his counsel was ineffective in violation of the governing standard found in *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to introduce his medical records.

Indeed, as observed by the Alabama Court of Criminal Appeals, Odom's counsel solicited testimony from him regarding his various health conditions and T.O., Odom's ex-wife and the mother of the victim, acknowledged the existence of Odom's various health conditions, and the fact that they could have contributed to the lack of intimacy during their marriage. Given this unrebutted evidence regarding Odom's health conditions, and the effect of such conditions, the undersigned finds, as did the Court of Appeals, that the medical records would have been cumulative of the evidence already produced. And, it is quite likely that defense counsel reached the same conclusion. Odom does not contend that his counsel failed to investigate his medical condition. To the contrary, he acknowledges that "[his counsel] had the records but he didn't show them." (Doc. 7-7 at 82-83). Given the totality of the circumstances, including his testimony, and that of T.O., defense counsel could have reasonably concluded that the medical records would have been merely cumulative of evidence that had already been presented to the jury. *See Grayson v. Thompson,* 257

F.3d 1194, 1216 (11th Cir.2001)("We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately."); *Singleton v. Thigpen*, 847 F.2d 668, 670 (11th Cir.1988) (A federal court must apply a "heavy measure of deference to counsel's judgments." (quoting *Strickland,* 446 U.S. at 691)).

Furthermore, in light of the strong evidence of guilt in this case, Odom has not demonstrated a reasonable probability that absent his counsel's alleged error in not introducing his medical records into evidence, the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.).

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Therefore, Odom's claim that his constitutional rights were

violated by his counsel's failure to present his medical records should be denied.

### 3. **Juror Misconduct**

Odom contends that his Sixth Amendment right to a trial by an impartial jury was violated due to juror misconduct. (Doc. 1 at 24-26). This claim was previously adjudicated on the merits within the state courts. Thus, as noted *supra*, pursuant to 28 U.S.C. § 2254(d), this court can only grant relief if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 413, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

Odom's juror misconduct claim is based on juror K.M.'s alleged untruthfulness during voir dire. (Doc. 1 at 24). According to Odom, while he was employed as a part-time bouncer at the "Ace of Hearts" bar, he once had to escort K.M. out of the establishment, and an altercation ensued between the two. (*Id.*; *T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App. 2013)). (Doc. 7-10 at 14). Odom contends that as a result of the alleged altercation, K.M. was biased against him, and should have revealed said bias during the during the voir dire process,

21

but failed to do so. Odom also asserts that during the voir dire process, K.M. denied knowing him or having any interest in the conviction or acquittal of Odom.  *T.O. v. State of Alabama*, CR-10-1889 (Ala. Crim. App. 2013) (Doc. 7-10 at 14).

In affirming the trial court's denial of Odom's motion for a new trial on this ground, the Alabama Court of Criminal Appeals determined that:

> The trial court, in denying T.O.'s motion for a new trial, concluded that T.O. had not met his burden of proof.  On appeal, T.O. has not demonstrated that the trial court abused its discretion in making that finding. As noted, [Odom] testified that he recognized K.M. during voir dire but could not remember his name or how he knew him.  Although the trial court did not elaborate on the reasons for its denial of the motion for a new trial, based on the evidence presented the trial court had the discretion to conclude that K.M.'s failure to respond to the questions at issue was due to inadvertence or a simple failure to recollect the alleged encounter with [Odom].

*T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App. 2013) (Doc. 7-10 at 17).

After a review of the record, the undersigned concludes that the state appellate court's finding is not "contrary to, or involve[s] an unreasonable application of, clearly established Federal law," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Nor has Odom shown by clear and convincing evidence that the state court's factual findings resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding.
§ 2254(d).  The record reflects that while Odom recognized K.M.
during jury selection as someone with whom he was familiar, it
was not until *after* the trial that Odom recalled the alleged
altercation between him and K.M.  From the record, it is not
clear when the alleged altercation took place, and Odom has
pointed to no facts suggesting that K.M. did not respond
truthfully to questions posed during the voir dire process.
Simply put, if Odom did not recall the circumstances surrounding
his familiarity with K.M. until *after* the trial had concluded,
it is equally likely that K.M. did not recall the alleged
altercation with Odom.  This is particularly true since it is
alleged that K.M. was intoxicated when the altercation occurred.
Given the absence of any evidence suggesting that K.M. was
biased, and purposefully provided false testimony during the
voir dire process, Odom has failed to carry his burden of
establishing his entitlement to habeas relief on this issue.

The same holds true with respect to Odom's claim that
during a jury break in the trial, juror K.M. was overheard
telling another juror of his intent to vote guilty.  The
appellate court, finding no prejudice, reasoned:

> [T]hree jurors testified at the hearing on the motion
> for a new trial that there were no improper
> discussions in the jury room regarding comments or
> outside communications.   Those jurors testified

> further that their verdict was based solely on the evidence heard in the courtroom and in compliance with the trial court's instructions.  The trial court therefore acted within its discretion in denying this claim.

*T.O. v. State of Alabama*, CR- 10-1889 (Ala. Crim. App. 2013) (Doc. 7-10 at 17).

Integral to the right to an impartial jury is the requirement that a jury base its verdict on the evidence presented at trial.  *See Turner v. State of Louisiana*, 379 U.S. 466, 472, 85 S. Ct. 546, 549, 13 L. Ed. 2d 424 (1965).  "In any trial, there is initially a presumption of jury impartiality; prejudice will not be presumed, but can be demonstrated by a defendant by a preponderance of credible evidence."  *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S. Ct. 51, 62 L. Ed. 2d 34 (1979) (citations omitted).  "Such prejudice may be shown by evidence that extrinsic factual matter tainted the jury's deliberations; any 'prejudicial factual intrusion' denies a defendant his rights to trial by an impartial jury and to challenge the facts adverse to him that are made known to the jury."  *Id.* (quoting *United States v. Howard*, 506 F.2d 865, 866 (5th Cir. 1975); *Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 451, 98 L. Ed. 654, 656 (1954)); *see also Reynolds v. United States*, 98 U.S. 145, 155, 25 L. Ed. 244 (1878) ("The theory of the law is that a juror who has formed an opinion cannot be impartial.").

24

In this case, Odom has failed to prove partiality on the part of any juror.  During the hearing on Odom's motion for a new trial, his counsel questioned three jurors regarding juror misconduct and communications or conversations held outside of the deliberation room. Each denied any improper communications took place.  Aside from his conclusory assertions, Odom has not pointed to any evidence that suggests that Juror K.M. engaged in improper conduct or that any of the jurors were exposed to extrinsic factual matter which tainted their deliberations. (Doc. 7-7 at 79-82).  Accordingly, Odom has failed to demonstrate that the state courts unreasonably applied federal law or that their decisions "w[ere] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s];" therefore, the undersigned concludes that the state court decisions were reasonable in light of the evidence presented, and that this claim should be denied.

## B. Issues raised in supplement

In his pleading titled "Supplemental Issues," which was filed more than a year after Odom's original petition, he attempts to raise, for the first time, several new issues. (Doc. 12). He claims that the prison sentence he is currently serving is illegal because it exceeds the maximum sentence allowed by law due to the application of a state parole statute, as well as

ineffective assistance of trial counsel for failing to advise him of the effects of the parole statute. (Doc. 12 at 2-4). The undersigned observes at the outset that Odom has not complied with Fed.R.Civ.P. 15 (a) in that he did not seek leave of Court to amend his petition, nor has he filed anything demonstrating the written consent of the Respondent.[11]

Moreover, the claims Odom seeks to raise in his supplement are barred by the statute of limitations. Pursuant to 28 U.S.C. § 2244 (d)(1), a state prisoner seeking a federal habeas corpus remedy must file his federal petition within one year of the "conclusion of direct review or the expiration of the time for seeking such review." The Act provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of:

---

[11] Rule 15(a) provides, in pertinent part:

(1) A party may amend its pleading once as a matter of course within:

    (A) 21 days after serving it, or

    (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires.

Fed.R.Civ.P. 15 (a)

(A) the date on which the judgment became
final by the conclusion of direct review or the
expiration of the time for seeking such review;

(B) the date on which the impediment to
filing an application created by State action in
violation of the Constitution or laws of the United
States is removed, if the applicant was prevented from
filing by such State action;

(C) the date on which the constitutional
right asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the
Supreme Court and made retroactively applicable to
cases on collateral review; or

(D) the date on which the factual predicate
of the claim or claims presented could have been
discovered through the exercise of diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

28 U.S.C. § 2244 (d).

As noted above, AEDPA imposes a one-year limitations period

on § 2254 actions and includes one of several commencement

dates, including "the date on which the judgment became final by

the conclusion of direct review or the expiration of the time

for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also*

*Pugh v. Smith,* 465 F.3d 1295, 1298 (11th Cir. 2006). In this

case, the Alabama Supreme Court, on May 10, 2013, denied

certiorari review following the Alabama Court of Criminal

Appeals denial of Odom's direct appeal and issued a Certificate

of Judgment. (Doc. 7-1 at 2).  Adding ninety days for the time in which to seek review before the U.S. Supreme Court, Odom's conviction became final on August 9, 2013, and he had one year, or until August 9, 2014 to file his federal habeas petition, absent a tolling event. [12]  Odom timely filed his original petition on March 16, 2014, but his supplement was not filed until more than a year later, on May 28, 2015. (Doc. 12).  While Section 2244(d)(2) provides for the tolling of the limitations period pending state court review of a properly filed application for post-conviction relief, *see In re Hill,* 437 F.3d 1080, 1083 (11th Cir. 2006), the filing of Odom's federal habeas petition did not toll the limitations period.  *Duncan v. Walker*, 533 U.S. 167, 181-82, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)(application for federal habeas corpus review does not toll the one-year limitation period under section 2244(d)(2)).  Thus, the limitation period kept running and expired on August 9, 2014, nearly ten months before Odom filed his supplement.

Odom's supplement, filed on May 28, 2015, was untimely unless the claims raised in the supplement "relate back" to the claims in Odom's original petition. *See* Fed.R.Civ.P. 15 (c) [13];

---

[12] In general, a judgment becomes final at the expiration of the ninety-day period in which to seek certiorari review from the Supreme Court of the United States. See Nix v. Sec'y for Dept. of Corr., 393 F.3d 1235, 1236 (11th Cir. 2004).

[13] Fed.R.Civ.P. 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when the claim

*Mayle v. Felix,* 545 U.S. 644, 664, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005). In *Felix*, the Supreme Court discussed the "relation back" doctrine in the context of habeas actions, and acknowledged that an amendment may relate back in time to the original filing if the amendment relates to a factual event or transaction in the original petition. Adopting the position espoused by the majority of circuits, the Supreme Court held that relation back can occur only "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657*; see also McLean v. United States,* 2005 U.S. App. LEXIS 19546, 2005 WL 2172198, *1 (11th Cir. Sept. 8, 2005).

The claims that Odom seeks to raise in his supplement do not relate back to the claims in his original petition. In the supplement, Odom claims that the sentence he is currently serving is illegal because it exceeds the maximum sentence allowed by law due to the application of a state parole statute. He also claims that his counsel was ineffective for falling to advise him of the effects of the parole statute. None of the claims in his original petition involve the state parole

---

arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading…" However, to relate back, the transaction or occurrence must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664, 125 S. ct. 2562, 162 L. Ed. 2d 582 (2005).

statute.     While   Odom   did   assert   ineffective   assistance   of
counsel claims in his original petition, they all pertain to his
counsel's  performance  at  trial  as  opposed  to  advice  he  gave
regarding  the  parole  statute.    Simply  alleging  some  form  of
ineffective assistance in his original petition is not enough to
entitle  Odom  to  add  an  entirely  new  claim  of  ineffective
assistance in his supplement. *See Edney v. Sec'y, Fla. Dep't of
Corr.,*  2014  U.S.  Dist.  LEXIS  18850  (N.D.  Fla.  Jan.  15,
2014)(claim  in  amended  petition  that  trial  counsel  was
ineffective  for  failing  to  investigate  and  challenge  the
victim's  competence  did  not  relate  back  to  ineffective
assistance claims raised in original petition — including that
counsel was ineffective for failing to procure the use of an
expert  to  discredit  the  credibility  of  the  alleged  victim).
Accordingly,  the  claims  in  the  supplement  are  untimely  because
they  do  not  relate  back  to  the  timely  claims  in  the  original
petition.

## IV.  __Certificate of Appealability__

Pursuant  to  Rule  11(a)  of  the  Rules  Governing  §  2254
Proceedings,  the  undersigned  recommends  that  a  certificate  of
appealability  in  this  case  be  **DENIED.**  28  U.S.C.  §  2254,  Rule
11(a)  ("[t]he  district  court  must  issue  or  deny  a  certificate  of
appealability  when  it  enters  a  final  order  adverse  to  the
applicant.").  The  habeas  corpus  statute  makes  clear  that  an

applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should be issued [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 146 L. Ed. 2d 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot* [*v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 77 L. Ed. 2d 1090 (1983)], includes showing that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); *accord Miller El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

Odom's petition does not warrant the issuance of a certificate of appealability as this Court is without jurisdiction to entertain portions of his claim, and the remaining claims are meritless.  Indeed, under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further.  Accordingly, the undersigned recommends that the Court conclude that no reasonable jurist could find it debatable whether Odom's petition should be dismissed and as a result, he is not entitled to a certificate of appealability.

## V.   Conclusion

Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that Odom's petition for habeas corpus relief be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, and against the Petitioner, Timothy Odom.  It is further recommended that any

motion for a Certificate of Appealability or for permission to appeal *in forma pauperis* be denied.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. ALA GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates

by reference or refers to the briefing done by the Magistrate

Judge is not specific.

      **DONE** this the **2nd** day of **February, 2017.**

        **/s/ SONJA F. BIVINS**  
**UNITED STATES MAGISTRATE JUDGE**
